(No. 4687—

THE L. F. CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 28, 1956.*
*Supplemental Opinion filed February 21, 1957.*

AARON, AARON, SCHIMBERG AND HESS AND HERBERT L. HART, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; BERNARD GENIS, Assistant Attorney General, for Respondent.

WHAM, J.

This cause comes before the Court on the motion of respondent to dismiss the complaint filed herein, which, together with the Departmental Report filed by respondent, suggestions in support of the motion, likewise filed by respondent, and the objections to said motion filed by claimant, establish undisputed and pertinent facts, thus presenting a question of law for the Court, which will be determinative of this cause.

Claimant, The L. F. Corporation, on October 28, 1954, under its then name of Lincoln Fields Racing Association, Inc., filed with the Illinois Racing Board an application for a license to conduct a horse racing meeting during the calendar year of 1955 at its race track located near Crete, Will County, Illinois. Claimant on that date paid to the Board $2,250.00, being an amount equal to 5% of the $45,000.00 fee for this license, in accordance with Sec. 37b of the Illinois Horse Racing Act, Chap. 8, Sec. 37b, Ill. Rev. Stats., (1955 State Bar Association Edition).

The Board on November 16, 1954 advised claimant that 30 days of racing, beginning May 16, 1955 and ending June 18, 1955, had been allotted to claimant. On November 22, 1954, in accordance with the above quoted statutes, claimant filed its acceptance with the Board, and paid the further sum of $4,500.00, being 10% of the license fee due the State of Illinois.

The Treasurer of the Racing Board, upon receipt of each of the above sums of money, immediately deposited such sums with the Treasurer of the State of Illinois, as required by the law of Illinois.

Thereafter, on March 24, 1956, claimant advised the Board that it had agreed on March 18 of that year to

sell its race track to the Balmoral Jockey Club, and that Lincoln Fields had, so far as legally possible, assigned its rights to conduct its 1955 racing meet to the purchaser, and further agreed that, in the event the purchaser was subsequently granted a racing license, and received credit for the amount previously paid to the Board by claimant, the purchaser was to pay claimant the amount so credited; or, if the amount was refundable to claimant, then claimant was to retain the refund.

On April 26, 1955, claimant further advised the Board by letter that it had assigned to the Balmoral Jockey Club, Inc., all rights to the "1955 racing license deposit of $6,750.00" made by claimant, and requested that the "deposit be applied toward the payment of the balance due from Balmoral Jockey Club, Inc., on account of the racing license to be issued to Balmoral Jockey Club, Inc., for its 1955 racing meet". This letter of April 26, 1955 was delivered to the Board by the Balmoral Jockey Club, Inc. On the same date and at the same time, the Jockey Club paid its license fee, and requested credit for the $6,750.00 previously paid by claimant.

The Board, thereafter, on May 10, 1955, by letter advised the Attorney General of the State of Illinois of the above state of facts, and, in addition, that the Balmoral Jockey Club had applied for its allocation of the 30 days, theretofore allotted to claimant, said meet to be held at Washington Park instead of Lincoln Fields; that the application had been approved, and 15% of the license fee paid by Balmoral Jockey Club as required by law; that said Jockey Club had requested the sum of $6,750.00, heretofore paid by claimant, to be credited upon the balance due on the Jockey Club's license fee.

The Board then requested advice as to whether or not it could give the requested credit. The Attorney General, on June 8, 1955, advised the Board in writing that, in his opinion, the Board could not allow the credit. Thereafter, the Balmoral Jockey Club paid the Board the balance of its license fee without being allowed the requested credit, and received its license.

Claimant, on August 23, 1955, demanded in writing that the Board immediately return the $6,750.00 theretofore paid by claimant to the Board. By letter, dated August 24, 1955, the Board, in answer to claimant, refused to comply with the demand on two grounds: namely, the opinion of the Attorney General to the effect that no credit could be paid to the Balmoral Jockey Club, Inc., of said amount, and, further, that the $6,750.00 so paid by claimant had theretofore been deposited with the Treasurer of the State of Illinois.

Claimant's position, as set forth in its complaint, and its objections to respondent's motion, is not based upon any claim that the Board wrongfully refused to credit the claimant's $6,750.00 payment to the Balmoral Jockey Club, Inc., in accordance with the terms of the conditional assignment and claimant's request; nor does claimant contend that the Attorney General erroneously advised the Board with respect to the question of making this credit. We will, therefore, not consider this question, since it has not been placed in issue by claimant.

It appears to be the position of claimant that the assignment to Balmoral of the amount paid the Board by claimant never became operative, that claimant retained all of its rights, title and interest to the amount paid, and that the $6,750.00 so paid by claimant was merely a deposit, which must be returned to claimant, inasmuch as no license was issued to claimant.

The Racing Board correctly advised claimant that it could not refund the amount paid by claimant to the Board. At the time the request was made by claimant, the amount had been turned over to the Treasurer of the State of Illinois by the Board.

The law is firmly established that a valid license fee, correct in amount, voluntarily paid to a governmental body, cannot be recovered in the absence of a statute authorizing such recovery.

There can be no question but what claimant voluntarily paid the $6,750.00, and, in fact, initiated the procedure by filing its application for a racing license before the Board.

The fact that the license was not issued is in no way determinative, since the only apparent reason for the non-issuance of the license applied for was the voluntary abandonment by claimant of its right to such license. It is apparent that claimant no longer desired to obtain such a license. There is no statute providing for the refund of the amount so paid by claimant.

The authority relied upon by claimant in support of its position is an abstract statement appearing in 53 C. J. 701, to-wit: "A sum deposited with an application for a license may be recovered on the failure or refusal to issue a license, without any fault on the part of applicant". This is not controlling, since the only reason such license was not issued was because of claimant's own actions and wishes, and not by reason of any failure or refusal on the part of the Board.

If claimant's view of the law on the subject is correct, then all persons or organizations applying for a license can, for any reason and at any time prior to the actual issuance thereof, change their minds, demand

a refund, and be entitled to recover from the state all amounts voluntarily paid. This would not be desirable from an administrative standpoint, nor is it the law.

Similar cases have been before this Court, and we have consistently held that no recovery can be had. *George S. Warren, Et Al* vs. *State of Illinois,* 14 C.C.R. 84; *Johnson, Assignee of Bud's Shoe Store, Inc.* vs. *State of Illinois,* 12 C.C.R. 157; *Wright and Wagner Dairy Corporation* vs. *State of Illinois,* 12 C.C.R. 149; *Orchard Theatre Corporation* vs. *State of Illinois,* 11 C.C.R. 271; *Chicago Cold Storage Warehouse Company* vs. *State of Illinois,* 13 C.C.R. 111.

We are of the opinion that the record in this case does not establish the right of claimant to a refund of the amount claimed, and, therefore, the motion of respondent is allowed, the complaint is dismissed, and the claim denied.

SUPPLEMENTAL OPINION

Claimant has filed a petition for rehearing and an amended complaint. Respondent has filed objections to the petition for rehearing, and a motion to dismiss the amended complaint.

As to the petition for rehearing, claimant has made no contention sufficient in our judgment to require a different conclusion than that expressed in our original opinion. We do not deem it necessary to detail our reasons for denying the petition, since they are obvious from a reading of the original opinion. The petition for rehearing is denied.

As to the amended complaint, we will consider it filed by leave of Court, and will pass upon its legal

sufficiency, which has been called into question by respondent's motion to dismiss.

The only issue raised by the amended complaint, which was not raised by the original complaint, is claimant's contention that the Illinois Racing Board failed and refused to credit claimant's $6,750.00 payment to the Balmoral Jockey Club, Inc., thereby wrongfully depriving claimant of said amount, inasmuch as Balmoral would have been required by the terms of the agreement between claimant and Balmoral to make payment of said amount to claimant upon allowance of the credit. Claimant prays that this Court enter an award of $6,750.00 in its favor "as the amount due to claimant by virtue of the error of the Board in refusing to credit the amount of said deposits to Balmoral".

This theory of claimant raises fundamental questions regarding the jurisdiction and power of both the Illinois Racing Board and the Court of Claims.

With respect to the Racing Board, the questions are these:

First, does the Board have the power and authority to grant credit in such a situation?

Second, if the Board does have such power and authority, is it a discretionary power, or, was the Board under an absolute duty to grant the credit requested?

With respect to the question involving the jurisdiction of the Court of Claims, assuming that the Board had the power and authority to consider the question of the requested credit, and, in its discretion, grant the request, does this Court have the jurisdiction to determine whether the Racing Board erred in not doing so?

It is obvious from a reading of the statute creating the Board and prescribing its duties that the Board is an administrative body exercising both ministerial and

quasi judicial powers. Chap. 8, Pars. 37(a) and 37(r), Ill. Rev. Stats., (1953 State Bar Association Edition).

With respect to the Board's powers in connection with the issuance or non-issuance of licenses authorizing the holding of a horse racing meeting and matters related thereto, the statute provides for hearings by the Board and judicial review of the Board's decisions.

Paragraph 37(c) of the Act provides in part as follows:

> "In case any license is refused or revoked by said Board *or in case any applicant is aggrieved at the action of the Board,* the party or parties affected by said refusal, revocation *or action* shall be entitled to a hearing in the manner hereinafter provided."

The statute then sets forth the mechanics for holding such a hearing, and provides that the Board shall thereafter make its findings, which shall be final, subject, however, to administrative review.

Again, assuming that the Board had the power to exercise its discretion in considering the question of granting the requested credit, it is apparent that any decision by the Board on that question would be within its quasi judicial powers.

The decision of the Board in refusing to allow the credit was predicated upon the opinion of the Attorney General, which opinion the Board sought. The decision was based upon a declaration that the Board had no authority to allow such a credit in the absence of specific statutory authority.

Thus, the effect of the decision was that the Board, acting in its quasi judicial capacity, interpreted the statute, which created it, and determined, whether rightly or wrongly, that it had no power to exercise discretion in considering the request for allowing such a credit.

If the Board misconstrued its powers, and by reason thereof failed to exercise its discretion, then there is nothing this Court can do, inasmuch as the discretion to be exercised, if any, was that of the Board as a quasi judicial function, and not that of the Court of Claims.

It would be highly irregular and improper for one judicial body to speculate upon what action another judicial body would have taken had it seen fit to accept jurisdiction and exercise its judicial discretion.

It would likewise be completely without the jurisdiction of this Court to sit in review of the action or inaction of a quasi judicial body, and we, therefore, make no finding as to whether the Board erred in refusing to exercise its quasi judicial discretion, if any, in the matter.

There is one remaining question for us to determine, namely, was the Board under an absolute duty to grant the credit requested?

We have carefully studied the briefs, heard extensive oral argument, and conducted considerable research into the law on this question, and have neither found nor been referred to a decision or statute, which establishes such a duty.

From the pleadings, taken in connection with the Departmental Report, it cannot be said that the Board entered into a contract with claimant, nor was it bound by the terms of the agreement between claimant and Balmoral. Neither can it be said that the Board induced or misled claimant through any improper action to place itself in its present position.

It was clearly stated by claimant in its letter of March 24, 1955 to the Board that the consumation of the sale of its track to Balmoral was not contingent upon obtaining the consent of the Board to transfer claimant's

racing dates to Balmoral. The only reference in that letter with respect to the monies theretofore paid by claimant to the Board for its racing license was that, "if" Balmoral is granted a license and receives credit, they "will pay it" to claimant, and, "*if* the deposit is refundable to Lincoln Fields by the Board, Lincoln Fields will retain said refund". Its letter, dated April 26, 1955, simply requested that Balmoral be given credit for the amount theretofore paid by claimant.

Nothing contained in any communication addressed to the Board indicated any intention of claimant to reassert an interest to a racing license at Lincoln Fields or any other track in the event no credit or refund was made.

Sec. 37(b) of the Horse Racing Act provides that: "The Board may, in its discretion, refuse racing dates and license to any applicant, who does not at the time possess a finished race track ready for racing and for the accommodation of the public".

Claimant had, prior to requesting that a credit be allowed to Balmoral, conveyed Lincoln Fields and "the right to conduct a race meeting" upon Lincoln Fields during the dates theretofore allotted claimant by the Board.

The allotting to Balmoral for racing at Washington Park of the dates, which claimant abandoned, in no way made the Board a party to the agreement, which was already completed, and it is obvious that such allocation had nothing whatsoever to do with claimant's decision to part with its property, and abandon its tentative rights to a license.

We conclude the facts appearing in the pleadings and the record before us fail, in our judgment, to raise

in law or equity an absolute duty on the Board to allow the requested credit.

Consequently, in view of the foregoing, the amended complaint fails to state a cause of action against respondent within the jurisdiction of this Court, and the motion to dismiss the amended complaint is granted, and the claim denied.